IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,                       No. CR S-06-35 MCE

  vs.

ERIC McDAVID,

      Defendant.                 ORDER

_____/

      This matter was on calendar on February 27, 2007 for defendant McDavid's discovery motions.  Mark Reichel, Esq., appeared for defendant, who was present in custody; R. Steven Lapham, Assistant United States Attorney appeared for the government.

I.  <u>Motion For Production Of Fruits Of Domestic Spying And Data Mining</u> (Docket No. 124)

      Defendant seeks discovery of "electronic communications information and material, such as call data, e-mail and internet activity" and "any and all information, data and material obtained through warrantless surveillance conducted by government agencies, including the NSA." Mot. at 5, 14.  He alleges that the NSA surveillance programs have captured "wholly domestic calls" and have used data mining to collect all data from the internet, ranging from persons' e-mails to the websites they have visited. Mot. at 14, 17.  These materials, he argues, are discoverable under the rule of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and Federal

1

1  Rule of Criminal Procedure 16(a)(1)(e), and under the government's general obligation to

2  disclose unlawful electronic surveillance.  As background for the motion, defendant relies on a

3  Brandeis brief of news articles, public comments and congressional testimony about surveillance

4  following September 11, and unreported orders from the prosecutions of suspected terrorists and

5  civil actions challenging aspects of the domestic surveillance program.[1]

6          The government argues that defendant has confused two different programs: the

7  first is the NSA's program to listen in to telephone calls of known terrorists, while the second is

8  an alleged agreement from major communications carriers to provide telephone calling records to

9  the NSA.  Opp'n at 2-3.  In addition, the government asserts that there was no electronic

10  surveillance of defendant or others connected to the investigation and, therefore, no connection

11  between any such surveillance and the government's case.  Finally, the government argues that

12  even if there were NSA surveillance or data mining, such materials are not in the government's

13  possession in order to be discoverable under Brady or under Rule 16.

14      A.  Brady

15          In Brady v. Maryland, 373 U.S. 83, 86 (1963), the Supreme Court recognized a

16  prosecutor's obligation to reveal exculpatory evidence, whether substantive or for impeachment

17  purposes, when such evidence is "material" to the defense and in possession of the government.

18  See also Giglio v. United States, 405 U.S. 150, 154-55 (1972) (disclosure of impeachment

19  information).

20          Evidence is "material" to the defense if "there is a reasonable probability that, had

21  the evidence been disclosed to the defense, the result of the proceeding would have been

22  different."  United States v. Bagley, 473 U.S. 667, 681 (1985).  Generally, this determination is a

23

24          [1]  In his supplemental brief, the attorney for the government complains about counsel's
    failure to attach copies of these unreported orders and cases as required by Local Rule 5-133(i), a
25  failure which made responding to the motion more difficult than necessary.  The court agrees with
    government counsel's complaint and further chides defense counsel for his failure to include tables
26  of contents and authorities with his motion.  See Local Rule 5-133(k).

1    retrospective one, undertaken after conviction, when potential <u>Brady</u> material has come to light.

2    In the pretrial setting, "'the prudent prosecutor will resolve doubtful questions in favor of

3    disclosure.'"  <u>Kyles v. Whitley</u>, 514 U.S. 419, 439 (1995).  Indeed, one court has suggested that

4    the concept of materiality had no place in a pretrial discovery setting and that a request for <u>Brady</u>

5    material must be evaluated to determine if it seeks evidence favorable to the defense.  <u>United</u>

6    <u>States v. Sudikoff</u>, 36 F.Supp.2d 1196, 1199 (C.D. Cal. 1999); <u>but see</u> <u>United States v. Acosta</u>,

7    357 F.Supp.2d 1228, 1243 (D. Nev. 2005) (rejecting the <u>Sudikoff</u> formulation and holding that

8    materiality governs pretrial requests).

9            When a <u>Brady</u> issue is raised after conviction, the defendant must prove three

10   elements: the evidence at issue must be favorable to the accused, because it is either exculpatory

11   or impeachment material; it must have been suppressed by the State, either willfully or

12   inadvertently; and prejudice must result from the failure to disclose the evidence.  <u>Benn v.</u>

13   <u>Lambert</u>, 283 F.3d 1040, 1052 (9th Cir. 2002).  At least one court has suggested that the defense

14   bears a similar burden on a motion for pretrial discovery.  <u>United States v. Uphoff</u>, 907 F.Supp.

15   1475, 1477 n.1 (D. Kan. 1995); <u>see also</u> <u>United States v. Waters</u>, 2006 WL 3761338, at *2 (W.D.

16   Wash. 2006) (denying the same motion brought by defendants charged with ELF-related crimes

17   because the "speculation about the likelihood of surveillance of ELF or ALF activists is simply

18   insufficient" to warrant the relief requested).

19           In <u>Sudikoff</u>, the defense sought the release of communications between an

20   accomplice who agreed to testify and the government, including materials relating to proffer

21   sessions.  <u>Sudikoff</u>, 36 F.Supp.2d at 1197.  In support of his request, defendant alleged that the

22   accomplice had "proffered various versions of his testimony during the period leading up to his

23   immunity agreement" and argued that the different versions were relevant to the witness's

24   credibility and motive to implicate him.  <u>Id</u>. at 1198.  In the instant case, however, defendant has

25   not suggested what evidence material or even favorable to his defense might have been culled

26   from any electronic surveillance of his telephone calls or mining of the records of e-mail

3

1  addresses or websites visited.  At most, he suggests that e-mails and telephone calls between the

2  cooperating co-defendants or with the confidential informant might be inconsistent with their

3  statements to the government.

4           This court need not determine the nature of defendant's burden on pretrial

5  discovery or whether his general allegations satisfy that burden, however, because he faces

6  another hurdle.  Evidence is in possession of the government if it is in possession of cooperating

7  agencies, United States v. Blanco, 392 F.3d 382, 388 (9th Cir. 2004) (when CI cooperating with

8  DEA had been given a special visa by INS and at least one DEA agent was aware of it this was

9  Brady material in a drug prosecution), or if the prosecutor has knowledge of and access to the

10  documents.  United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989) (documents outside the

11  district may be Brady material if prosecutor has knowledge and access).

12           Defendant suggests that the NSA's surveillance program might have included him

13  because he is considered to be among the members of ELF and ALF, which law enforcement

14  deems to be domestic terrorists with ties to similar organizations in the United Kingdom.  Mot. at

15  4-5.  He also argues that the FBI's Joint Terrorism Task Force was involved in the investigation

16  and suggests that the FBI might have "misused terror powers," though without clearly identifying

17  what that form of misuse might have taken.  Mot. at 22, 25.

18           Although defendant discusses the NSA's activities at length, he has failed to link

19  them to this prosecution or to make any sort of showing that the prosecutor has knowledge of and

20  access to any results of the NSA's surveillance.  Defendant claims that the Joint Terrorism Task

21  Force participated in the underlying investigation, but offers nothing apart from speculation to

22  connect that group to the NSA's warrantless electronic surveillance and data mining.

23           Accordingly, on this record, defendant has not made a sufficient showing to

24  justify an order based on Brady.

25  /////

26  /////

4

B.  Rule 16

Under Federal Rule of Criminal Procedure 16(a)(1)(e), a defendant is entitled to inspect and copy "books, papers, documents, data, photographs, tangible objects. . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense. . . ." The government argues that any materials on electronic surveillance conducted by the NSA are not in its custody, possession or control and are not material.

As with the Brady requirement of possession or control, materials are subject to the rule if the prosecutor has knowledge of or access to them or if they are maintained by an agency involved in the investigation.  United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) (government aware that Bureau of Prisons maintained files on inmate witnesses and had obtained at least one file); United States v. Liquid Sugars, Inc., 158 F.R.D. 466, 474 (E.D. Cal. 1994) (information underlying expert testimony was in the government's possession even though the experts were from state agencies, because the government intended to use these witnesses); see also United States v. Libby, 429 F.Supp.2d 1, 11 (D.D.C. 2006) (documents from the CIA were "in the possession" of the special counsel when there had been a "free flow" of documents between them and those documents had been used to obtain the indictment).

Defendant has failed to make a preliminary showing that the prosecutor in this case has knowledge of or access to any results of NSA surveillance or data mining or that the NSA is a part of the "prosecution team."  Moreover, he relies on similar speculation that the Joint Terrorism Task Force is involved in similar kinds of monitoring or has received information from the NSA.

/////
/////
/////
/////
/////

1   In addition, before a court may order disclosure, the defense must make a prima

2   facie showing of materiality:

3   Neither a general description of the information sought nor
conclusory allegations of materiality suffice; a defendant must

4   present facts which would tend to show that the Government is in
possession of information helpful to the defense.

5

6   United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990).  The determination of

7   "materiality" is left largely to the district court, but generally, evidence is material if it will "play

8   an important role in uncovering admissible evidence, aiding witness preparation, corroborating

9   testimony, or assisting impeachment or rebuttal."  Liquid Sugars, 158 F.R.D. at 471 (emphasis in

10  original).  Accordingly, evidence may be material if it is inculpatory or exculpatory.

11      Nevertheless, defendant has made no showing of materiality.  As noted above, he

12  has speculated that there may be impeachment material in any intercepted communications

13  involving the co-defendants and the confidential informant, but this is merely a "general

14  description" insufficient to satisfy his burden under the rule.

15      C.  Government Disclosure Of The Existence Of Surveillance

16      Finally, defendant argues that the government has a duty to disclose whether there

17  has been electronic surveillance and whether any surveillance contributed to the investigation and

18  prosecution of the case.  He relies on Alderman v. United States, 394 U.S. 165 (1969) and

19  Gelbard v. United States, 408 U.S. 41 (1972).

20      In Alderman, the Supreme Court granted hearings in several cases in which the

21  defendants learned that they had been subject to warrantless electronic surveillance only after the

22  cases were on appeal.  Alderman, 408 U.S. at 167-70.  The Court ultimately remanded the cases

23  for hearings to determine whether the illegal surveillance had tainted evidence offered against

24  them at trial, but rejected defendants' claim that the usual rules of standing to challenge Fourth

25  Amendment violations were inapplicable to such violations.  Id. at 174.  The Court noted that a

26  defendant could seek a taint hearing "if the United States unlawfully overheard conversations of

6

1    a petitioner himself or conversations occurring on his premises, whether or not he was present or

2    participated in those conversations." Id. at 176.  The Court concluded that "surveillance records

3    as to which any petitioner has standing to object should be turned over to him without being

4    screened in camera by the trial judge" and anticipated that "adversary proceedings" would be

5    held to determine the taint, if any.  Id. at 182, 184.

6           In Gelbard v. United States, 408 U.S. 41, 54 (1972), the Supreme Court addressed

7    the application of a statute enacted by Congress in 1970, 18 U.S.C. § 3504, which establishes

8    procedures to be followed when a person alleges he might have been subjected to electronic

9    surveillance.  The statute provides in part:

10          (a) In any trial, hearing, or other proceeding . . . .

11                 (1) upon a claim by a party aggrieved that evidence
                    is inadmissible because it is the primary product of
12                 an unlawful act or because it was obtained by the
                    exploitation of an unlawful act, the opponent of the
13                 claim shall affirm or deny the occurrence of the
                    alleged unlawful act;

14
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
15
                    (b) As used in this section "unlawful act" means any act the use of
16                 any electronic, mechanical, or other device (as defined in section
                    2510(5) of this title) in violation of the Constitution or laws of the
17                 United States. . . . .

18   18 U.S.C. § 3504.

19          Although defendant relies on Gelbard to argue that he is entitled to information

20   about electronic surveillance, the issue in that case was whether a grand jury witness could use

21   the government's illegal interception of his communications as a defense to contempt charges

22   arising from the refusal to answer questions arguably derived from the illegality.  Gelbard, 408

23   U.S. at 47.  The Court assumed that the witnesses had been subjected to electronic surveillance

24   and so did not consider the contours of the showing necessary to trigger the government's duty to

25   respond.  Id.

26   /////

7

1          In United States v. Apple, 915 F.2d 899 (4th Cir. 1990), the Court of Appeal

2    examined the question raised by the instant motion:

3               [A] party claiming to be the victim of illegal electronic surveillance
                must first demonstrate that his interests were affected before the
4               government's obligation to affirm or deny is triggered. This
                "standing requirement" is met if a definite "claim" is made by an
5               "aggrieved party." A cognizable "claim" need be no more than a
                "mere assertion," provided that it is a positive statement that illegal
6               surveillance has taken place. But the claimant must also make a
                prima facie showing that he was "aggrieved" by the surveillance;
7               that is, that he was a party to an intercepted communication, that
                the government's efforts were directed at him, or that the
8               intercepted communications took place on his premises. This
                critical showing may not be based on mere suspicion; it must have
9               at least a "colorable basis."

10   Id. at 905; see also In re Grand Jury Investigation, 437 F.3d 855 (9th Cir. 2006) (a grand jury

11   witness's general or unsupported claim requires only a general response); United States v.

12   Faulkner, 439 F.3d 1221, 1223 (10th Cir. 2006); United States v. Nabors, 707 F.2d 1294, 1301-

13   02 (11th Cir. 1983) ("While a mere assertion of illegal wiretapping unsupported by evidence may

14   suffice [to trigger this section], it must be a positive statement that unlawful surveillance did in

15   fact take place," and there must be allegations of a causal link between the monitoring and the

16   prosecution); United States v. Fitch, 472 F.2d 548 (9th Cir. 1973) (counsel's vague and

17   speculative affidavit required only general answer). Defendant in this case had made absolutely

18   no showing, general or otherwise, which would trigger the government's duty to respond under

19   the statute.

20          Defendant also points to orders in several federal cases in other districts as

21   authority for his claim.[2] Not all of these support his position. For example, in United States v.

22   Aref, Cr. No. 04-402 (N.D.N.Y), the court denied the defendants' request that the government

23   affirm or deny electronic surveillance under the auspices of 18 U.S.C. § 3504. Aref, Docket No.

24   206 (Order of 3/10/06). In addition, in Alharamain Islamic Charities, No. 06-274 KI (D. Or.), the

_____

25
26          [2]   As noted in footnote 1, plaintiff did not provide copies of these orders to the court or to
      plaintiff.

8

court acknowledged that a confidential document containing surveillance information had been

given to plaintiff's lawyers inadvertently, but found that requiring the government to disclose

whether there were other surveillance of plaintiffs could harm national security. Alharamain

Islamic Charities, Docket No. 79 (Order of 9/7/06) at 17. Finally, in United States v. Al-Timimi,

No. 05-4761 (4th Cir.), the Court of Appeal simply vacated the appeal and remanded the case to

allow the district court to entertain a motion for disclosure of unauthorized electronic

surveillance; it said nothing about the merits of any such motion in the district court. Al-Timimi,

Order of 4/25/06.

            In two of the cases relied upon by defendant, courts have ordered disclosure. In

Turkmen v. Ashcroft, No. 02 CV 2307 (JG) (E.D.N.Y.), the plaintiffs had been investigated for

terrorist activities, but thereafter had been deported or voluntarily left the country and were

maintaining contact with their attorneys by electronic means. They sought disclosure of whether

their privileged communications were being intercepted; they did not seek broad disclosure of

previous electronic communications. Based on the government's acknowledged policy of

monitoring the communications from suspected terrorists outside the United States and the

concern for maintaining privileged communications, the court directed a limited disclosure:

whether any of the defendants, likely witnesses or members of the trial team has knowledge of

the substance of intercepted confidential communications. Docket No. 560 at 5 (Order of

10/3/06). This case is not like Turkmen, for the government has not acknowledged the types of

communications defendant may have engaged in nor has defendant sought a narrow disclosure of

the prosecution team's exposure to confidential communications.

            In United States v. Abu Ali, Cr. No. 05-053 (E.D. Va.), the defendant was

convicted of conspiracy to provide support to Al-Qaeda, among other charges. After revelations

of the NSA's warrantless electronic surveillance of those connected with Al-Qaeda, the district

court directed the government to file a declaration from someone with personal knowledge of

whether intercepted information was used to secure a warrant from the FISA court or to secure

1  evidence presented at trial.  Docket No. 396 (Order of 2/17/06).

2  Even if this order had precedential value, it's factual underpinnings are

3  sufficiently different from the instant case so as to undercut its utility in deciding the issues

4  presented by this motion.  In Abu-Ali and the other unpublished orders relied upon by defendant,

5  the defendant was a member of a group of people specifically mentioned as being potential

6  targets for warrantless surveillance.  In this case, in contrast, defendant offers only his

7  speculation that suspected ELF members have been subjected to warrantless surveillance or data

8  mining.  Moreover, he has presented nothing suggesting that he used any of the communications

9  companies he has identified as cooperating with the government's data mining activities.

10  In short, on this record defendant has not met his initial burden, which would

11  require the government to confirm or deny whether he was the subject of warrantless electronic

12  surveillance.

13  II.  Motion To Compel The Government To Identify What Evidence It Will Use (Docket Nos.

14  146, 156)

15  Defendant seeks an order directing the government to specify what documentary,

16  audio and video evidence it will use at trial and with what witnesses the items will be used.  The

17  government has opposed the motion, noting that it has made documentary evidence available for

18  inspection and copying as required by Federal Rule of Criminal Procedure 16 (a)(1)(E).  It also

19  notes, as a practical matter, that this is not a prosecution dependent on a large number of

20  documents.

21  In United States v. Turkish, 458 F.Supp. 874 (S.D.N.Y. 1978), the court directed

22  the government to identify which of the 25,000 discovery documents it intended to use at trial.

23  However, in United States v. Nachamie, 91 F.Supp.2d 565, 570 (S.D.N.Y. 2000), the court

24  concluded that the rule does not require this and that there is no authority to so order, however

25  sensible the practice would be.  See also United States v. Spagnuolo, 515 F.2d 818, 821 (9th Cir.

26  1975) (court cannot compel government to release Jencks act material before trial, however

1  desirable this practice would be).

2         As a practical matter, the government will give the notice defendant seeks when it

3  assembles its exhibit book for trial.  Although this may not be precisely what defendant seeks, it

4  will guide defendant in his final trial preparations.

5  III.  <u>Motion For Grand Jury Transcripts</u> (Docket Nos. 142, 157)

6         Defendant seeks the release of transcripts of comments made to the grand jury by

7  Assistant United States Attorneys and case agents.  He argues that he has filed "numerous

8  motions which establish that a large number of illegalities occurred by law enforcement and the

9  government in the investigation and prosecution of this defendant."  Mot. at 3.  From this

10  premise, he argues that he is entitled to these grand jury materials, particularly to determine if the

11  government failed to inform the grand jury of the existence of exculpatory information and if

12  there were other unspecified improprieties that might form the basis of a motion to dismiss.

13  Mot. at 9.  At the hearing, defendant also suggested that the grand jury may have been exposed to

14  inflammatory comments the prosecutor made to the media or information gathered by the

15  confidential informant after defendant was represented by counsel.

16         Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule

17  of grand jury secrecy, but does not define its outer limits; a release may violate grand jury secrecy

18  even if it does not necessarily violate the rule.  <u>In re Special Grand Jury</u>, 674 F.2d 778, 781 (9th

19  Cir. 1982).  Under the rule, a court may release grand jury material to a defendant "who shows

20  that a ground may exist to dismiss the indictment because of a matter that occurred before the

21  grand jury."  Fed. R. Cr. P. 6(e)(3)(E)(ii).  While flagrant prosecutorial misconduct may usurp the

22  grand jury's role, "[o]nly a defect so fundamental that it causes the grand jury no longer to be a

23  grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right

24  not to be tried."  <u>Midland Asphalt Corporation v. United States</u>, 489 U.S. 794, 802 (1989);

25  <u>United States v. Samango</u>, 607 F.2d 877, 882 (9th Cir. 1979) (flagrant misconduct may usurp

26  grand jury's role).

To justify this release, the defendant must show what has been described as a "particularized need:"

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury . . . has concluded its operations . . .

Douglas Oil Co. v. Petrol Stops, 441 U.S. 211, 222 (1979). This showing cannot be based on speculation; "[i]t is not sufficient for [defendant] to assert that he has no way of knowing whether prosecutorial misconduct occurred." United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir. 1987). Moreover, if the request lacks "substantive purpose," it does not meet the standard of particularized need. United States v. Welch, 201 F.R.D. 521, 525 (D. Utah 2001). Finally, a presumption of regularity attaches to grand jury proceedings. Hamling v. United States, 418 U.S. 87, 139 n.23 (1974).

The government has no duty to present exculpatory evidence to the grand jury. United States v. Williams, 504 U.S. 36, 55 (1992). To the extent defendant seeks to determine what, if anything, government attorneys and agents said about exculpatory evidence, this goal lacks substantive purpose, for it would provide a slim basis, if any, for a motion to dismiss.

A grand jury's exposure to allegedly inflammatory publicity might provide the basis for a motion to dismiss, but defendant has not overcome the presumption of regularity in this case. United States v. Dionisio, 410 U.S. 1, 15 (1973) ("jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge"); United States v. Dorfman, 532 F.Supp. 1118, 1138-39 & n.21 (N.D. Ill. 1981) (defendant is entitled to unbiased grand jury, but must show prejudice).

Finally, defendant has not explained how the grand jury's alleged awareness of the confidential informant's contacts with him after he had retained counsel is necessary to prevent

/////

1    an injustice, in light of his currently pending motion to dismiss raising the same ground.  <u>See</u>

2    Docket No. 136.

3    IV.  <u>Release Of Co-Defendants' Presentence Reports</u> (Docket Nos. 145, 158)

4            Co-defendants Lauren Weiler and Zachary Jenson have pleaded guilty and agreed

5    to cooperate with the government.  Docket Nos. 81, 102.  Defendant seeks access to the

6    presentence reports prepared following their pleas as potential sources of <u>Brady</u> and <u>Giglio</u>

7    material.  The government recognizes its obligations under <u>Brady</u> and <u>Giglio</u>, but opposes the

8    release of the presentence reports.

9            In <u>United States v. Alvarez</u>, 358 F.3d 1194, 1207 (9th Cir. 2004), the Ninth

10   Circuit recognized that although a criminal defendant has no constitutional right of access to

11   presentence reports themselves, he is entitled to the release of any <u>Brady</u> material or matters

12   germane to credibility.  Accordingly, the court must conduct an <u>in camera</u> review of the reports

13   about significant witnesses or rely on an examination by the probation officer.  <u>United States v.</u>

14   <u>Stifler</u>, 851 F.2d 1197, 1202 (9th Cir. 1988).

15           The government concedes that Jenson and Weiner are significant witnesses in this

16   case.  Accordingly, the court finds it appropriate that the presentence reports in this case be

17   reviewed <u>in camera</u>.  The parties have stipulated that this review may be undertaken by the

18   magistrate judge.

19   V.  <u>Motion For A Bill Particulars</u> (Docket Nos. 144, 159)

20           Defendant asks for a bill of particulars on the date the conspiracy began or was

21   completed; the date he is alleged to have joined the conspiracy; the object of the conspiracy–was

22   it to damage and destroy or damage or destroy certain property, and to use fire and explosives or

23   fire or explosives; the exact targets of the conspiracy; and the role of each defendant–did each

24   agree to the destructive acts alleged in the indictment.  The government counters that the

25   indictment provides the dates of the conspiracy and the object of the conspiracy and that it has no

26   /////

1  burden to show whether all three agreed to commit all of the acts alleged as objects of the

2  conspiracy.

3          The Ninth Circuit has stated:

4          The purposes of a bill of particulars are threefold: To inform the
           defendant of the nature of the charge against him with sufficient
5          precision to enable him to prepare for trial, to avoid or minimize
           the danger of surprise at the time of trial, and to enable him to
6          plead his acquittal or conviction in bar of another prosecution for
           the same offense when the indictment itself is too vague, and
7          indefinite for such purposes.

8  United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir. 1991) (internal quotations omitted).  A bill

9  of particulars is not meant to provide the defendant with all of the evidence that the government

10 will introduce at trial.  Instead, the goal of a bill of particulars is satisfied if the defendant is

11 aware of "the theory of the government's case."  United States v. Ryland, 806 F.2d 941, 942 (9th

12 Cir. 1986).

13         Even if an indictment is vague, a bill of particulars is not necessary if the

14 government's disclosures and discovery adequately advise the defendant of the charges against

15 him.  See United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) ("Full disclosure will

16 obviate the need for a bill of particulars.");  United States v. Mitchell, 744 F.2d 701, 705 (9th Cir.

17 1984).  A bill is generally formulated in response to specific questions posed by the defense.

18          The Ninth Circuit has rejected a request for the time the conspiracy was formed

19 as part of a bill of particulars.  United States v. DiCesare, 765 F.2d 890, 989-99 (9th Cir. 1985).

20 In this case, in addition, the dates, membership and objects of the conspiracy are included in the

21 indictment, which is sufficient to allow defendant to avoid surprise.  Ayers, 924 F.2d at 1484.

22         The government may charge in the conjunctive and prove in the disjunctive

23 without violating a defendant's rights, so a defendant is not entitled to a bill of particulars on his

24 second point.  United States v. Urrutia, 897 F.2d 430, 432 (9th Cir. 1990).

25         Finally, the government's burden in a conspiracy case is to prove a conspiracy has

26 three elements:  (1) an agreement to accomplish an illegal objective; (2) coupled with one or

1   more acts in furtherance of the illegal purpose; and (3) the requisite intent necessary to commit

2   the underlying substantive offense.  United States v. Rubio-Villareal, 927 F.2d 1495, 1499 (9th

3   Cir. 1991).  There is no requirement that the government prove all of the conspirators agreed to

4   damage all the targets or even prove the exact nature of the targets.  Accordingly, defendant is

5   not entitled to a bill of particulars.

6   VI.  Motion For Release Of Proffers (Docket Nos. 84, 141, 160)

7           Defendant seeks release of the co-defendants' communications, including those

8   made by their attorneys, leading to their cooperation agreements.  The government responds that

9   any statements by the attorneys would not be admissible and that, in any case, there were no

10  letters from co-defendants' counsel setting out proffers.  Counsel for the government says it will

11  release the co-defendants' statements along with Jencks material and that his practice is to

12  release these materials two weeks before trial.

13          In United States v. Sudikoff, 36 F.Supp.2d at 1204 , the district court found any

14  variations in proffers from a former co-defendant turned witness is Brady material and

15  information that reveals the nature of the negotiation is Giglio material, whether those statements

16  are embodied in communications from the cooperating co-defendant himself or from counsel.

17  These are discoverable "at a time when disclosure may be of value to the accused."  United

18  States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000).

19  VII.  General Discovery Motion (Docket Nos. 85, 140)

20          The parties have agreed to confer on this motion and submit any unresolved issues

21  to the court.  At the time this order is being signed no unresolved issues have been presented for

22  this court's resolution.

23          Accordingly, IT IS HEREBY ORDERED:

24          1.  Defendant's motion for disclosure of electronic surveillance and data mining

25  materials is denied (Docket No. 124);

26  /////

15

2.   Defendant's motion for order compelling government to identify the documents and tapes it will use at trial is denied (Docket Nos. 146, 156);

3.   Defendant's motion for release of grand jury transcripts is denied (Docket Nos. 142, 157);

4.   Defendant's motion for release of co-defendants' presentence reports is granted in part; the undersigned will conduct an in camera review of the reports before trial and release any materials deemed appropriate in conjunction with the government's release of Jencks material, two weeks before trial.  (Docket Nos. 145, 158).  The parties are instructed to notify the court when trial is set, so review may be calendared;

5.   Defendant's motion for a bill of particulars is denied (Docket Nos. 144, 159);

6.   Defendant's motion for release of proffers and communications reflecting the nature of the negotiations, whether prepared by co-defendants or their attorneys is granted and the materials are to be released in conjunction with other Brady and Giglio materials (Docket Nos. 141, 160); and

7.   Defendant's motion for discovery is denied without prejudice, subject to being reopened if counsel cannot reach accord (Docket No. 140).

DATED:  March 26, 2007.


_____
U.S. MAGISTRATE JUDGE

2

mcda0035.dsc